IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SHIRLEY A. MELTON                                                                             PLAINTIFF

V.                                                                   CIVIL ACTION NO. 3:05CV250-SAA

JO ANNE B. BARNHART,
Commissioner of Social Security                                                        DEFENDANT

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Shirley A. Melton for disability benefits under Title II and Title XVI of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

## STATEMENT OF THE CASE

Plaintiff Shirley A. Melton was born on May 23, 1957, and thus has been classified as a younger individual for all pertinent phases considered within this action. She possesses a seventh-grade education. Her past relevant work includes that of a waitress, home health aid and janitor. She protectively filed her application for disability insurance benefits on February 28, 2002, alleging that she became disabled on January 8, 2002, due to depression, a bad ankle, bronchitis, difficulty breathing and alcoholism. Her claim was denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge. The

plaintiff's first hearing on this matter was held before administrative law judge (ALJ) Willie L. Rose on June 4, 2004, where she was represented by attorney Thomas U. Reynolds.

In his decision issued on June 25, 2004, the ALJ found plaintiff was not disabled within the meaning of the Social Security Act in that she was capable of performing jobs that exist within the national economy. The plaintiff's request for a review of this decision by the Appeals Council was granted on August 27, 2004, and the Appeals Council vacated the decision and remanded the case to the ALJ with direct instructions on resolving specific issues. In general terms, the Appeals Council found that the original 2004 decision lacked updated medical records, an adequate evaluation of a treating source opinion, and an adequate explanation of how the ALJ determined the severity of plaintiff's mental functional limitations. (R. at 100.)

A second hearing was conducted on May 11, 2005, with ALJ Willie L. Rose again presiding. Before and during this hearing, additional medical records were received into the record. The ALJ rendered his second decision on May 25, 2005, which found that the plaintiff was not disabled under the Act due to her ability to perform jobs within the national economy. The plaintiff's request for a review of the second decision was denied by the Appeals Council on October 20, 2005; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court.

Plaintiff's brief asserts that the ALJ erred in (1) finding that jobs existed in the national economy which the plaintiff could perform where the ALJ did not pose a proper hypothetical question to the vocational expert but referred the expert to a psychologist's report, (2) finding the plaintiff capable of performing substantial, gainful employment where the ALJ failed to set out all the claimant's impairments within the hypothetical question posed to the vocational

2

expert, (3) basing his decision upon an impermissible selective reading of the record, (4) failing to properly evaluate plaintiff's pain and mental impairments, (5) failing to consider the combination of the plaintiff's impairments and their impact upon the plaintiff, (6) failing to properly consider evidence of treating physicians. From the outset, the court finds that the plaintiff's third issue essentially addresses the weight accorded to physicians' statement and should thus be fused with the sixth issue due to their common subject matter. Likewise, common sense dictates that the first and second issues be examined together and addressed last as they refer to the final consideration within the disability analysis.

## DISCUSSION

A. <u>Standard of Review</u>

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial

evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

      B.      <u>Five-Step Sequential Evaluation Process</u>

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1527. Second, the plaintiff must prove her impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527; *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). At step three, the ALJ must conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d). Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant

work. 20 C.F.R. § 404.1520(e). If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(f). If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff must then prove that she cannot, in fact, perform that work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

    C.    <u>Individual Issues Considered</u>

        1.    *Whether the ALJ Failed to Consider the Combination of Impairments and Their Combined Impact Upon the Plaintiff.*

The plaintiff argues that the decision lacks an "effective discussion" of the combined effects of plaintiff's impairment upon her and that the decision impermissibly "fragmented" the plaintiff rather than considering her as a whole person. (Pl.'s Brief at 18.) Although an ALJ is under a duty to consider a claimant as a whole, in the Fifth Circuit an ALJ has clearly evaluated the cumulative effect of a claimant's impairments if, as here, the ALJ specifically found that the claimant failed to meet step three of the sequential evaluation process. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The ALJ included within his findings that the instant plaintiff "does not, however, have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (R. at 26.) Consequently, the court denies this issue as grounds for reversal.

        2.    *Whether the ALJ Failed to Follow Proper Procedure in Evaluating the Plaintiff's Pain and Mental Impairments.*

The plaintiff's argument as to this issue falls under the general umbrella of plaintiff's own credibility; she essentially argues that the prescription and use of medications themselves

5

constitute evidence that should have been considered explicitly within the decision in evaluating her complaints of pain. According to plaintiff, "[t]he ALJ in minimizing or negating the effect of pain impairment on plaintiff failed to properly consider the pain medication that she had been prescribed for many years since her alleged onset of disability, and the effect of the pain medications on plaintiff" other than vague references to medication. (Pl.'s Brief at 14.) Without specifying any particular section, the plaintiff contends that the ALJ violated the Code of Federal Regulations by failing to follow "the prescribed methods of pain and syptom evaluation as set forth [therein]." *Id.* This argument centers around the fact that her drug history clearly demonstrates that she genuinely suffered and continues to suffer from chronic pain and from severe depression or other mental impairment.

Due to the lack of specificity, the court can only assume that the plaintiff is referring to 20 C.F.R. § 404.1529, which describes how symptoms, including pain, are evaluated. 20 C.F.R. § 404.1529(c)(3) states that the Social Security Administration will "carefully consider any other information [a claimant] may submit" regarding the claimant's symptoms, which includes medications. Under Social Security Ruling 96-7, in determining credibility,

> [t]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements . . . [t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms.

However, there is no law within this Circuit placing an affirmative duty upon the ALJ to make specific, written findings in regard to the medications – the only obligation put upon the ALJ by the regulations and corresponding ruling regarding prescription medication is that he "must consider" any such medication. In this Circuit, where an ALJ renders an unfavorable credibility

6

determination, the determination will be upheld so long as the ALJ "weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Thus, the ALJ's determinations as to the disabling nature of a claimant's pain are entitled to considerable deference. *Wren v. Sullivan*, 925 F.2d 123, 128-129 (5th Cir. 1991) (citations omitted).

The ALJ does list the medication factor from Social Security Ruling 96-7 within his decision, stating that in determining credibility he must decide whether the plaintiff's complaints are consistent with "the dosage, effectiveness, and side effects of any medication." Though he fails to specifically address the dosage, effectiveness, and side effects of plaintiff's prescribed medications within the portions of the decision addressing her credibility, the court finds that there is no such duty and that the ALJ was only required to articulate specific reasons for discrediting the plaintiff. Even if it were error to omit affirmative findings as to medicines prescribed to a claimant in determining credibility, this failure would constitute harmless error in the instant situation. Because the ALJ made numerous affirmative findings as to the claimant's credibility which were based upon his interpretation of the record, including but not limited to treating physician statements and the plaintiff's own testimony and purported conduct, the Commissioner has satisfied her burden. This court does not sit in a position to re-weigh the evidence, and the reasoning put forth by the ALJ represents more than a mere scintilla of evidence. Based upon the foregoing, the court denies this alleged point of error as grounds for reversal.

       3.    *Whether the ALJ Discounted the Opinions of the Treating Physicians Through a Selective Reading of the Record and Failed to Properly Consider Evidence of Treating Physicians.*

The plaintiff reasons that the ALJ improperly discounted the opinions of plaintiff's

7

treating physicians, which invites the court to conduct a good-cause analysis and to determine whether the ALJ's decision is supported by substantial evidence. Regarding plaintiff's purported ankle impairment, plaintiff specifically contends that:

> The ALJ made a selective reading of the record and justified his discounting of the treating physicians of plaintiff, being Dr. Stanford and Dr. Corkern (tr. 23) and others by relying in his finding, on his purported summary of Dr. Cooper Terry's, an orthopaedist, examination of plaintiff.[1] The examination of plaintiff by Dr. Terry . . . is indeed consistent with the picture painted . . . by Dr. Gaines L. Cook, consulting physician of the Social Security Administration (tr. 219-221) and of reports and statements of Dr. Corkern on plaintiff (tr. 831) and of Dr. Stanford, and other treating physicians of plaintiff as well.

(Pl.'s Brief at 11.) In regard to her mental functional capacity, plaintiff finds fault with the ALJ for disregarding Dr. Small's opinion after his second examination of plaintiff to the effect that she has a reduced ability to make enduring efforts toward repetitive tasks and to follow instructions.[2] More importantly, the plaintiff emphasizes within this argument that the ALJ found the plaintiff capable of standing for thirty minutes without interruption where the record provides no support from a physician for this assessment, and he did not consider the limitation expressed by Dr. Adams – a consultative physician – that leg elevation would be required. The court necessarily considers instances where a plaintiff contends that the ALJ made an

---

[1] Plaintiff later identifies Dr. Townes as a treating physician whose opinion was improperly disregarded by the ALJ. (Pl.'s Brief at 22.) The court agrees that Drs. Townes, Corkern and Stanford are treating physicians. The court is unsure whether plaintiff believes Dr. Cooper Terry should be considered a treating physician, but this belief appears likely due to her use of the term "treating orthopaedist." (*Id.* at 21.) However, pursuant to the definition of treating physician as provided in 20 C.F.R. 404.1502 and 416.902, the court finds that Dr. Terry is not a treating physician due to Dr. Terry and plaintiff's lack of an ongoing treatment relationship.

[2] Plaintiff's brief focuses on her ankle and mental impairments, but the opinion of this court will consider her other impairments as well.

8

impermissible selective reading of the record and must then decide whether the Commissioner's decision is supported by substantial evidence.

a. Rejecting Treating Physicians' Opinions

Plaintiff focuses on the fact that the ALJ discounted the opinions of her treating physicians Drs. Stanford, Corkern and Townes. Dr. Stanford's opinion dated May 27, 2003, stated that the plaintiff has been unable to work since 2002 due to chronic low back and heart catheterization and that it was unknown whether she would be capable of returning to work. (R. at 258.) Dr. Corkern stated in his May 5, 2005, "chronicle to serve as evidence of the need for disability of Ms. Shirley Melton" that the plaintiff suffered from "severe chronic degenerative joint disease." Dr. Corkern further explained that "[r]adiological studies reveal degenerative joint disease with which she experiences lumbar radiculopathy. Other comordities [sic] further debilitating her are diabetes mellitus, chronic obstructive pulmonary disease, and hypertensive cardiovascular disease. She suffers from insomnia and anxiety which have led to depression." (R. at 831.) Though not specifically identified by plaintiff, the court assumes that the Dr. Townes opinion to which she refers is his December 12, 2004, final diagnoses of chronic obstructive pulmonary disease, acute exacerbation of bronchitis, pneumonitis, hypertension, and non-insulin dependent diabetes mellitus. (R. at 401.) Dr. Adams, a consulting physician for the Social Security Administration upon whose opinion the ALJ explicitly relies, diagnosed plaintiff with osteoarthritis, COPD, hypertension, anxiety and depression, all of which the ALJ likewise found were the plaintiff's impairments excluding osteoarthritis, for which the ALJ substituted post-traumatic arthritis.[3] (R. at 371-76, 23.) There is no mention of her chronic lower back pain

---

[3]The ALJ found that plaintiff suffered from chronic bronchitis rather than COPD; however, COPD is an umbrella term under which chronic bronchitis falls. Osteoarthritis is

9

or diabetes in either Dr. Adams's report or medical source statement. (*Id.* at 371-76.)

As an initial matter, the court disregards Drs. Stanford and Corkern's opinions on whether plaintiff is capable of working because this decision clearly is reserved to the Commissioner alone. 20 C.F.R. §§ 404.1527(e)(1), 416 (e)(1). Generally "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995). An ALJ may reject or assign little weight to the opinion of a treating physician when good cause is shown; good cause may exist "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (internal citations omitted). In *Newton*, the Fifth Circuit held that, "absent reliable medical evidence from a treating or examining physician," the ALJ may reject a treating physician's opinion "only if the ALJ performs a detailed analysis of the treating physician's view under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)," which is:

> (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.

*Id.* at 453.

Clearly the ALJ's decision failed to apply the *Newton* analysis to Dr. Townes's opinion

---

synonymous with degenerative joint disease; however, post-traumatic arthritis is another form of arthritis.

as the decision never mentions a Dr. Townes, much less his opinions. In regard to Drs. Corkern and Stanford, the ALJ stated that he was not unaware of their opinions but that the "opinions of Dr. Sanford [sic] and Dr. Corkern are not only conclusions on an issue reserved to the Commissioner, but are not supported by the other medical evidence, including the clinical findings and opinions of Dr. Terry, an orthopedist, Dr. Adams, and Dr. Whelan and Dr. Small in 2002." (R. at 23.) First, the Corkern and Stanford opinions in an area reserved to the Commissioner represent only a small fraction of their reports and other opinions. Social Security Ruling 96-2p states, "[i]t is not unusual for a single treating source to provide medical opinions about several issues [and] adjudicators must always be aware that one or more of the opinions may be controlling while others may not." Thus, it was a misstatement of law to declare that the entire opinions of Dr. Cokern and Stanford are reserved to Commissioner. Second, Drs. Whelan and Small have no relevance to the opinions of Drs. Stanford, Corkern, or Terry because Drs. Whelan and Small's opinions concern plaintiff's mental issues as opposed to her physical impairments.

The ALJ discounted the plaintiff's purported chronic lower back pain with the cursory statement, "there is no evidence of back pathology." (R. at 23.) Drs. Stanford and Corkern both reported that plaintiff suffered from lower back pain.[4] The record lacks objective evidence as to back pain, which may be due to the fact that – because the back pain is categorized as chronic – no physicians have felt the need to conduct testing on plaintiff's back. An ALJ is entitled to discount the plaintiff's impairment where the record lacks objective, clinical findings to support

---

[4]Dr. Adams wholly failed to mention this impairment and neither Dr. Whelan nor Dr. Small would have been expected to discuss back pain.

the existence of the impairment and the ALJ determines that the claimant is less than credible. In the underlying decision, however, the ALJ failed to explain whether he discounted the plaintiff's back pain based upon his credibility assessment of the plaintiff or for some other reason, which the ALJ should clarify upon remand.

The ALJ did not mention either degenerative joint disease, also called osteoarthritis, or diabetes mellitus. Dr. Townes and Dr. Corkern identify diabetes mellitus, which is also notably absent from Dr. Adams's report. More importantly, both Dr. Adams and Dr. Corkern found that the plaintiff suffered from degenerative joint disease. The ALJ may have concluded incorrectly that post-traumatic arthritis is essentially degenerative joint disease; regardless, the ALJ's decision must be remanded as to the existence of these two impairments and to afford the ALJ the opportunity to engage in a good-cause analysis if the ALJ does not agree that these impairments exist.

The ALJ determined that the record lacks objective medical evidence to support Dr. Stanford's opinion that plaintiff is impaired as a result of her heart catheterization, and the court agrees. Treating physician Dr. Roberts subsequently found that her catheterization was normal, and because such a report constitutes reliable evidence from a treating physician, the ALJ had good cause to depart from Dr. Stanford's finding on this issue. Although the ALJ should have specifically explained this reasoning rather than merely mentioning that her later reports of chest pains were likely the result of a high dosage of Ritalin, this failing alone does not warrant remand as to this particular claimed impairment.

      b.  Opinions Regarding Mental Capacities

The plaintiff claims that the ALJ erred when he found consulting physician Dr. Small's

second opinion less compelling based upon the difference between that opinion and the "findings contained in Dr. Whelan's report and Dr. Small's earlier report, which was not purchased by the claimant's attorney, and which was done in a less biased setting." (R. at 20.) Consequently, the ALJ afforded Dr. Small's second opinion little to no weight and relied heavily upon Dr. Whelan's assessment and Dr. Small's earlier report. Because neither Dr. Small nor Dr. Whelan may be considered treating physicians in the instant case as they were merely consulting physicians, the ALJ was free to give lesser weight to Dr. Small's second opinion. Because the ALJ articulated how the evidence within the record supported his decision to largely disregard Dr. Small's subsequent opinion, the Commissioner is affirmed as to this issue.

c. Residual Functional Capacity

Though not listed as an individual ground for reversal, the plaintiff noted that the ALJ found the plaintiff capable of standing for thirty minutes without interruption without any support for these findings within the record and did not indicate that leg elevation would be required. (R. at 24.) The medical source statement by the administration's consulting physician Dr. Adams regarding plaintiff's physical residual functional capacity found that plaintiff could stand/walk without interruption for no longer than ten minutes and would occasionally need to elevate her right leg. (R. at 375.) The ALJ chose to discredit that opinion without any substantive analysis.

The pertinent social security ruling declares, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR

13

96-8p. Consequently, the court finds remand as to this issue proper so that the ALJ may fully explain his rationale for substituting his own assessment of plaintiff's residual functional capacity for the consulting physician's opinion. SSR 96-8p requires that the ALJ provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." There appears to be an enormous amount of medical evidence illustrating that the plaintiff suffers from complications in her right ankle which thus renders this specific finding important to the final outcome of plaintiff's disability determination. Because the ALJ must resolve numerous matters on remand that will precede his residual functional capacity assessment, the court will not rule at this time on whether the present assessment is supported by substantial evidence.

4. *Whether the Commissioner Erred in Failing to Include Impairments Within the Hypothetical Question Posed to the Vocational Expert.*

The plaintiff contends that the hypothetical question posed to the vocational expert was improper because, rather than verbally recounting specific mental limitations that the ALJ found the plaintiff to possess, the ALJ asked the vocational expert to consider a multi-page report by Dr. Whelan that addressed his opinion of plaintiff's mental limitations. The Fifth Circuit has specifically held that "[u]nless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . . a determination of non-disability based on such a defective question cannot stand." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). To incorporate "all disabilities," the ALJ is required to include impairments and limitations which he has found. *Id*. A plaintiff need not draw the ALJ's attention to

14

deficiencies within the hypothetical question in order to claim error.[5] *Id*. Allowing administrative law judges to bypass the important step of actually articulating limitations to a vocational expert would cripple the entire purpose of posing a succinct, hypothetical question and hinder this court's review process. As a consequence, and regardless of the VE's assertion that his review of Dr. Whelan's assessment would not have changed his opinion, the court finds that this decision must also be remanded for the ALJ to incorporate *every* limitation he finds in the hypothetical question posed to the vocational expert. So long as the ALJ puts this information before the VE who then responds under oath, the court does not require – but certainly does not preclude – that the ALJ conduct a third hearing (*i.e.*, the ALJ may submit his questions in writing to the VE to which the VE would respond in writing and under oath).

Plaintiff also argues that the hypothetical question was deficient because it did not incorporate "the impairments from which plaintiff suffers and mischaracterized the severity of the impairments from which plaintiff suffers." (Pl.'s Brief at 9.) However, the ALJ is only required to list limitations that he *found*.[6] The court notes that the ALJ did find that plaintiff suffered anxiety, but it is not clear that he put any anxiety-related limitation before the vocational expert. This impairment and corresponding limitations must therefore be considered upon remand.

---

[5]Defendant cites to *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994) for the proposition that no error exists where plaintiff's counsel was afforded an opportunity to correct deficiencies within a hypothetical, but this statement of the law was later clarified in *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001)*,* cited by the court.

[6]The specific limitations as to the plaintiff's specific abilities must be utilized in determining residual functional capacity, which the court has ruled must be reconsidered.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is reversed and remanded to the ALJ for the purposes outlined within this opinion. A separate order of judgment reversing the Commissioner's final decision shall issue contemporaneously with this opinion.

This, the 27th day of November, 2006.

    /s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE